ORIGINAL

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED
2015 NOV -4 PM 4: 10
DEPUTY CLERK_____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

---

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. |
| STANLEY JAMES, JR. (01) <br> JOHN CHRISTOPHER WARE (02) | |

The Grand Jury Charges:

3-15CR-494-B

### Introduction

At times material to this Indictment:

1. The Controlled Substances Act ("CSA"), 21 U.S.C. § 801 et seq. and its implementing regulations in 21 C.F.R. §1301 et seq., governs the possession, manufacture, distribution, dispensing, administering, and prescribing of controlled substances within the United States. With limited exceptions for medical professionals, the CSA makes it "unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance" or conspire to do so.

2. The CSA and its implementing regulations sets forth which drugs and other substances are defined by law as "controlled substances," and those controlled substances are assigned to one of five schedules (Schedule I, II, III, IV, or V), depending on their

Indictment - Page 1

potential for abuse, likelihood of physical or psychological dependency, accepted medical use, and accepted safety for use under medical supervision.

3.  The CSA and its implementing regulations classified hydrocodone as a Schedule III controlled substance when combined with a non-narcotic (such as acetaminophen) in a therapeutically recognized amount before October 6, 2014. On October 6, 2014, hydrocodone became a Schedule II controlled substance. Hydrocodone is the generic name for a narcotic analgesic that is also sold under a variety of brand names such as Vicodin, Norco, and Lortab. Hydrocodone is also referred to by the street names "hydros," "vics," "norcos," and "tabs," among other names. When legally supplied by a licensed practitioner for a legitimate medical purpose in the usual course of professional practice, hydrocodone is used to combat moderate pain. Hydrocodone is a widely abused narcotic that is frequently diverted from legitimate medical channels and distributed to drug abusers.

4.  Medical practitioners, including doctors, nurse practitioners, pharmacies, and pharmacists, authorized to possess, manufacture, distribute, or dispense controlled substances by the jurisdiction in which that medical practitioner is licensed, are authorized under the CSA to dispense controlled substances if they are registered with the Attorney General of the United States. Such medical practitioners and pharmacies are assigned a registration number with the Drug Enforcement Administration ("DEA").

5. Even if authorized in his jurisdiction and registered with the DEA, 21 C.F.R. §1306.04(a) prohibits a medical practitioner from issuing a prescription for a controlled substance unless the prescription is "issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." The regulation further states: "The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription. An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of [the CSA] and the person knowingly filling such a purported prescription, as well as the person issuing it, is subject to the penalties provided for violations of the provisions relating to controlled substances."

6. **Stanley James, Jr.**, and **John Christopher Ware**, defendants, are not medical practitioners authorized in any capacity in the state of Texas to distribute or dispense controlled substances, are not registered with the Attorney General of the United States, do not possess DEA registration numbers, and are not authorized under the CSA to manufacture, distribute, or dispense Schedule I, II, III, IV, or V controlled substances.

### Count One
Conspiracy to Distribute a Controlled Substance
(21 U.S.C. § 846)

### OBJECTS OF THE CONSPIRACY

7. Paragraphs one through six are realleged and incorporated here.

8. Beginning at least as early as October 2013 and continuing through on or about October 8, 2015, the exact dates being unknown, in the Dallas Division of the Northern District of Texas and elsewhere, **Stanley James, Jr.**, and **John Christopher Ware**, defendants, did knowingly, intentionally, and unlawfully combine, conspire, confederate and agree together and with each other, and with other persons both known and unknown to the Grand Jury, to commit an offense against the United States, to wit:

   a. To possess with intent to distribute and distribute a mixture and substance containing a detectable amount of hydrocodone, a Schedule III controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(E); and

   b. To possess with intent to distribute and distribute a mixture and substance containing a detectable amount of hydrocodone, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

## MANNER AND MEANS

1. The objects of the conspiracy were to be accomplished in the following manner and means:

2. It was part of the conspiracy that individuals, often homeless or of limited means, were recruited to pose as patients at certain medical clinics to obtain prescriptions for controlled substances, including oxycodone and hydrocodone, and fill those prescriptions at designated pharmacies;

3. It was further part of the conspiracy that the recruits would be paid a fee, such as $30, to pose as patients to go to clinics and pharmacies;

4. It was further part of the conspiracy that the recruiter would organize the recruits so that another individual, such as a driver, would pick them up and transport them to and from the clinics;

5. It was further part of the conspiracy that the recruiters would be paid a small fee, such as $15 per person, for each individual they recruited by the driver or the script ring leader;

6. It was further part of the conspiracy that the driver, script ring leader, or another co-conspirator such as someone associated with the clinic, would coach the recruit on what to say inside the clinic to obtain the specified prescription;

7. It was further part of the conspiracy that the driver or script ring leader would pay for the recruit's visit to the clinic, either by giving the recruit money to pay the clinic or by paying the clinic directly;

8. It was further part of the conspiracy that the specified clinics would refuse to accept insurance or Medicaid from recruits seeking pain medications, such as hydrocodone, and instead charge a recruit approximately $125 to several hundred dollars in cash per medical visit;

9. It was further part of the conspiracy that the specified clinics, at the direction of their owners and managers, would attempt to minimize the possibility of detection by law enforcement by limiting patients to recruits accompanied by known and trusted drivers;

10. It was further part of the conspiracy that the specified clinics, at the direction of their owners and managers, would attempt to maximize profit by providing the prescriptions sought by the script ring leaders, such as 10mg hydrocodone;

11. It was further part of the conspiracy that the specified clinics, at the direction of their owners and managers, would provide hydrocodone prescriptions by hiring medical practitioners willing to write them even though the clinic owners, managers, and practitioners knew they were not issued for a legitimate medical purpose in the usual course of professional practice;

12. It was further part of the conspiracy that the driver or script ring leader would transport the recruits and prescriptions, or would cause the prescriptions alone to be transferred, to designated pharmacies so that the prescriptions would be filled;

13. It was further part of the conspiracy that the clinics, at the direction of their owners and managers, designated pharmacies where drivers and script ring leaders would take their illicitly-obtained hydrocodone prescriptions to be filled even though the clinic owners, managers, medical practitioners, and pharmacists knew that the scripts were not issued for a legitimate medical purpose in the usual course of professional practice;

14. It was further part of the conspiracy that the designated pharmacies refused to accept insurance or Medicaid in payment for pain medications, such as hydrocodone, and instead only accepted cash payments;

15. It was further part of the conspiracy that the drivers or script ring leaders would pay for the prescriptions at the pharmacies and obtain the controlled substances that the pharmacies dispensed;

16. It was further part of the conspiracy that co-conspirators, from the clinic owners and managers, to script ring leaders, to drivers, and recruits, would conceal and assist others to conceal the illicitly-issued nature of the prescriptions, the quantities of controlled substances obtained and distributed, and drug proceeds to avoid detection by law enforcement officers; and

17. It was further part of the conspiracy that the script ring leaders would distribute and dispense, and possess with intent to distribute and dispense, hydrocodone, in Texas and elsewhere.

## OVERT ACTS

18. In furtherance of the conspiracy and to accomplish the objects of the conspiracy, **Stanley James, Jr.** and **John Christopher Ware**, defendants, and others known and unknown to the Grand Jury, committed the following overt acts in the Dallas Division of the Northern District of Texas and elsewhere:

19. On or about August 28, 2013, according to Texas Secretary of State records, **Stanley James, Jr.** and **John Christopher Ware** created an umbrella company known as J.C. Rapha Medical Management Group, LLC ("J.C. Rapha") to operate medical clinics;

20. By September 2013, the exact date being unknown, J.C. Rapha had begun to operate Great Southwest Medical Clinic ("Great Southwest"), a pill mill located on Great Southwest Parkway, in Dallas, Texas, involved in the illicit distribution of prescriptions for controlled substances, namely hydrocodone;

21. **Stanley James, Jr.** and **John Christopher Ware** owned, directed, and managed Great Southwest;

22. By the end of September 2013, the exact date being unknown, J.C. Rapha had closed Great Southwest. Shortly thereafter, in October 2013, the exact date being

pill mill located on Billings Street in Arlington, Texas, involved in the illicit distribution of prescriptions for controlled substances, namely hydrocodone;

23. **Stanley James, Jr.** and **John Christopher Ware** owned, directed, and managed Arlington Oaks;

24. In or about January 2014, the exact date being unknown, J.C. Rapha opened Redbird Family Medical Clinic ("Redbird"), a pill mill located on Camp Wisdom Road in Dallas, Texas, involved in the illicit distribution of prescriptions for controlled substances, namely hydrocodone;

25. **Stanley James, Jr.** and **John Christopher Ware** owned, directed, and managed Redbird;

26. In mid-2014, **Stanley James, Jr.** and **John Christopher Ware** decided to separate at least part of their business interests;

27. On or about July 23, 2014, according to Texas Secretary of State records, **John Christopher Ware** and another individual formed AC Medical Management Group, LLC ("AC Medical") to operate medical clinics;

28. **John Christopher Ware** assumed management of Arlington Oaks and changed the clinic's name to AC Medical Clinic ("ACM"), while **Stanley James, Jr.** assumed management of Redbird;

29. In approximately November 2014, the exact date being unknown, AC Medical relocated ACM to East Arkansas Lane in Arlington, Texas;

30. In approximately March 2015, the exact date being unknown, AC Medical opened KSW Medical Management ("KSW"), a pill mill located on Bolton Boone Drive, in Desoto, Texas, involved in the illicit distribution of prescriptions for controlled substances, namely hydrocodone;

31. **John Christopher Ware** owned, directed, and managed ACM until he closed it on or about May 20, 2015;

32. **John Christopher Ware** owned, directed, and managed KSW until its closure on or about October 8, 2015;

33. **Stanley James**, **Jr.** owned, managed, and directed Redbird until its closure on or about October 8, 2015;

34. **Stanley James**, **Jr.** and **John Christopher Ware** together and with each other, and with other persons both known and unknown to the Grand Jury, operated Great Southwest, Arlington Oaks, ACM, Redbird, and KSW in the manner described above in paragraphs one through seventeen;

35. Between October 2013 and October 8, 2015, the exact dates being unknown, **Stanley James**, **Jr.** and **John Christopher Ware**, together and with other persons both known and unknown to the Grand Jury, distributed and possessed with intent to distribute more than 1,500,000 10mg hydrocodone pills, a Schedule II and III controlled substance, through Great Southwest, Arlington Oaks, ACM, Redbird, and KSW, knowing that the prescriptions for these pills had not been issued for a legitimate

intent to distribute more than 1,500,000 10mg hydrocodone pills, a Schedule II and III controlled substance, through Great Southwest, Arlington Oaks, ACM, Redbird, and KSW, knowing that the prescriptions for these pills had not been issued for a legitimate medical purpose by a medical practitioner acting in the usual course of professional practice.

All in violation of 21 U.S.C. § 846, the penalty for which is found at 21 U.S.C. § 841(a)(1) and (b)(1)(C) and (b)(1)(E).

## Forfeiture Notice
### (21 U.S.C. § 853(a))

36.  Pursuant to 21 U.S.C. § 853(a), upon conviction for the offense alleged in Count One of this indictment, **Stanley James, Jr.**, and **John Christopher Ware**, defendants, shall forfeit to the United States any property constituting or derived from proceeds obtained, directly or indirectly, as a result of the offense and any property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of the offense.

A TRUE BILL

_____
FOREPERSON

JOHN R. PARKER
UNITED STATES ATTORNEY

_____
MARY F. WALTERS
Assistant United States Attorney
Texas State Bar No. 24003138
1100 Commerce Street, Suite 300
Dallas, Texas  75242-1699
Telephone: 214.659.8685
Facsimile: 214.659.8803

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE UNITED STATES OF AMERICA

v.

STANLEY JAMES, JR. (01),
JOHN CHRISTOPHER WARE (02)

INDICTMENT

21 U.S.C. §846
Conspiracy to Distribute a Controlled Substance

21 U.S.C. §853(a)
Forfeiture Notice

(1 COUNT)

A true bill rendered

_____
DALLAS                                                FOREPERSON

Filed in open court this 4th day of November, 2015

---

**DEFENDANT STANLEY JAMES, JR. IN FEDERAL CUSTODY; DEFENDANT JOHN CHRISTOPHER WARE ON BOND.**

_____
UNITED STATES ~~DISTRICT~~/MAGISTRATE JUDGE
3:15-MJ-745-BH